## MILLER *v.* McCAFFREY.

A contract in writing contained a stipulation, that the party (defendants) reserved the right of making alterations in the plan of the work during its construction, the expense of which should be agreed on at the time, but no *extras* should be allowed for, under any pretext whatever: the defendants are not liable for the increased cost of the work, occasioned by alterations made with their assent or approbation, where there was no bargain as to the price, according to the terms of the contract; or unless an express promise to pay the value of such work is proved.

An agreement with a stranger by a party to a contract, to accept what he should determine as a fair compensation, and a refusal to accept that sum, is no bar to an action on the contract, against the party not bound by such agreement.

· In error from the Common Pleas of Westmoreland.

The plaintiff declared in assumpsit, on the common counts, against Miller and four others. The evidence was, that the defendants, who were a building committee of a congregation, had entered into a contract, under seal, with the plaintiff, for the erection of a church edifice, according to a designated plan and at a fixed price. The contract contained the following stipulation :—

"At any time during the progress of the building, the committee reserves the right to direct any alteration or variation from the original plan, so as not to vary therefrom in any very essential manner, so as to cause any material extra expense to the building; but any alteration suggested by them shall be made, and the expense, if any, shall be agreed upon at the time; but no extras shall be allowed, under any pretext whatever."

The action was brought for extra work done upon the building. The evidence was, that plaintiff had made various alterations in the plan, by which the cost of the building was increased. The price for one item only of these changes was agreed upon. But the defendants knew of the alterations, and made no objections; and some of them at least approved of the acts of the plaintiff. The building had been delivered to and accepted by the congregation.

There was also evidence that plaintiff had agreed with a committee of the congregation to accept such a sum as they should name, but afterwards refused to be bound by their determination.

Burrell,· P. J., instructed the jury :—"This provision in favour of the defendants was one, however, which they might waive if they saw proper; and if they directed extra work to be done without previously fixing the price of it, they could not escape

x 2

responsibility for it, under the clause in the article referred to. And as they could waive that stipulation in part, so they could waive it altogether; and if while extra work was in progress, or after it was done, they agreed and assented to it, and adopted it, although no price was fixed at the time of the assent, they would be liable to the plaintiff for what it was reasonably worth. It is not necessary that the plaintiff shall have shown their assent and adoption of extra work done, in express words. Their assent is a question of fact to be arrived at by the jury from the testimony, and may be as well shown by their acts and conduct as by words. The acts of one of the defendants, in relation to the extra work, would not of course furnish any evidence of assent by the others, nor bind them."

And in answer to the point, that an absolute and distinct promise by all the defendants was necessary to entitle plaintiff to recover: "it states the law correctly, and is answered affirmatively; with this modification, however, that the defendants could waive the stipulation in the article of agreement, if they saw fit, and make themselves liable for extra work by assenting to it, and adopting it while in progress, or after it was done, and that their assent and adoption may be shown by their acts and declarations."

To the fifth point, that the agreement to accept what should be awarded by the committee barred the action, the court said that it was not binding on defendant for want of mutuality, the plaintiffs not being parties to it nor bound by it. And further, that the acceptance and use of the building by the congregation was no evidence of the assent by defendants to the alterations and changes in the plan.

*Cowan*, for plaintiff in error.

*Foster*, contrà.

*Oct.* 16. ROGERS, J. (after stating the cause of action and the agreement.)—The committee seem to have been fully aware of the risk to which owners are exposed, of an increased expense under the specious pretence of charges for extra work; and hence this unusually prudent, wise, and cautious provision. It will be remarked, the committee reserve to *themselves* the power to suggest alterations in the plan. These the contractor is bound to conform to, unless it interferes with the plan in some essential particular, and provided also that there is an expressed agreement as to the price of the proposed alteration. The rights of both parties are

therefore particularly guarded. The committee are freed from innovations, without their express consent; the contractor from material alterations, inasmuch as he cannot be compelled to accept the suggestions of the committee, unless consistent with the original plan, and at a fair price to be agreed upon at the time. In anticipation, it would be difficult to imagine how any contest could arise between the parties; and that none would have occurred may be confidently asserted, had the plaintiff thought proper to follow the wise and prudent advice of his pastor and friend, who told him if the committee asked him to do anything on his contract, he ought to do it, and that he must take the contract as his guide. Instead of pursuing these sensible suggestions, and in utter disregard of his contract, he evinces displeasure because the committee refused to accede to some of his proposed alterations, and, in the extremity of his wrath, he declared he would not be bothered with them any longer; that he would build the church to please himself, and if he should suffer loss by it, it would be a monument to his children. The witness adds, he did go on and build it to please himself. These are some of the circumstances under which the plaintiff asks additional compensation for extra work, to be paid by the individual members of the committee. In support of such a claim, justice requires there should be full and stringent proof. The action can only be maintained by clear and satisfactory evidence of a new, distinct, and independent contract between the parties, authorizing the alterations in the original plan, and expressly agreeing to pay for them a certain fixed price, or what they may be reasonably worth. Short of full proof of these essential particulars, the action cannot be sustained. It is obvious, that unless these principles are rigidly enforced, it is worse than useless to enter into a special contract, or attempt to guard against impositions sometimes ruinous to the owner. If the contract is to be thrown open because one of the committee approved of a particular alteration—that sometimes all of the committee, at others a less number attended while the work was going on—that in the opinion of the witness, they must have known of the extra work—that they often talked of the extra work, without expressing any displeasure at the alterations—that one of them said, speaking of the door in front, he did not think such an improvement could be made on the same piece of work: if for one or all these particulars, a solemn contract may be set aside, then it is a useless piece of folly to put such agreements in writing. We shall never be in want of testimony of the kind above alluded to; and it will follow,

that the only possible mode of escaping, for the owner (even if that can protect him), will be to absent himself altogether, while the work is in progress. If the unhappy owner expresses his satisfaction with the building, he is bound to give an additional compensation; nay, if he does not expressly dissent, he is still in the same category. In truth, he would be an unnatural and ill-natured man, who would not express satisfaction when he observes that the builder is more than fulfilling his contract—that he is making a better job of it, in workmanship and plan, than he agreed to do. But does it follow, that when improvements are made without any consultation with the owner, to gratify the taste or the laudable vanity of the contractor, that he shall be compelled to pay the additional expense, if any there be, in direct opposition to the words and spirit of his contract? The adoption of such a rule would be particularly unjust here; for it is sought in this action to charge the defendants individually, although they have but an interest in common with the plaintiff, as members merely of the same congregation. It is a remarkable fact, which shows the danger to which persons in the situation of the defendants are exposed, that the defendants have been charged with upwards of $1,300 beyond their contract for extra work (with a single exception of an item costing $25), without a particle of proof that they either authorized the alterations, knew of the increased expense, or promised to pay for them. In the charge of the court, and the answer to the points, there is a pervading error. The court appear to have thought, and so the jury must have understood them (for there is no accounting for the verdict on any other principle), that because the defendants stood by, saw the alterations in the plan without objection, and accepted the work, that therefore there was full proof of the agreement. This was a mistaken and mischievous view of the case. [His honour here stated the charge of the court in regard to the extra work.] From the obvious sense of this language, as applied to the evidence, we must enter our dissent. The jury must have understood the court as instructing them, that standing by, seeing the work going on, adopting it after it was finished by accepting the work, was full evidence of an agreement binding on the defendants. But this we deny, unless there was superadded evidence of an express promise to pay either a certain sum or what the additional work was reasonably worth. If the court had explained what was meant by assenting to and adopting the work, in all probability we should have been saved all difficulty by a verdict for the defendants. If,

however, the court intended to say—and this is the obvious construction of the language used—that if the defendants were satisfied, did not forbid the plaintiff making the alterations or improvements, and afterwards adopted it by accepting it, this constituted an agreement binding on the defendants, it is an error which this court is bound to correct. It is an elementary principle, that a workman employed to do a job, who adds extra work without consulting his employer, cannot charge for it: Hart *v.* Norton, 1 McCord, 22. So in Wilmot *v.* Smith, 3 C. & P. 453, the plaintiff agreed to construct a printing-press, with a cast-iron bottom, for the defendant, for 4*l.* 10*s.*, and he furnished him one with a wrought-iron bottom, and sued for 5*l.* 5*s.*, it was held he could recover but 4*l.* 10*s.*, although the press was better, and the defendant did not object to it or offer to return it. This is a case very like the present, and rules it.

The court is further of the opinion, that in other respects the charge is correct, and that there is no error in giving a negative answer to the defendants' fifth point. We adopt the answer and the reasons given by the judge.

In conclusion, I will venture to suggest that the plaintiff was badly advised in rejecting the peace-offering of the congregation, which we sincerely hope may be renewed and accepted. A claim to a reasonable compensation for a building, which does credit to the taste of the congregation as well as the contractor, addresses itself to their sense of justice and liberality. All the witnesses concur that the work has been finished in a masterly manner, and that it is an ornament to the borough in which it is situated.

Judgment reversed, and a *venire de novo* awarded.